UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>CHARLES PILLON,<br><br>        Defendant. | Case No. 02:18-cv-1845<br><br>**COMPLAINT** |

Plaintiff United States of America, by authority of the Attorney General, on behalf of the United States Environmental Protection Agency ("EPA"), alleges as follows:

**I. NATURE OF THE CASE**

1. This is a civil action under Section 104 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9604, for an order (1) authorizing EPA to enter and to respond to hazardous substances, pollutants, or contaminants, located on and under property owned and controlled by Defendant; (2) prohibiting Defendant from impeding or interfering with EPA's access and response activities on the Property; and (3) prohibiting Defendant from tampering with, preventing access to, defacing, or destroying monitoring wells or other equipment placed on the Site by EPA or its contractors.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this case pursuant to Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b); Section 311(n) of the CWA, 33 U.S.C. § 1321(n); Section 1017(b) of OPA, 33 U.S.C. § 2717(b); and 28 U.S.C. §§ 1331, 1345 and 1367(a).

3. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b); Section 1017(b) of OPA, 33 U.S.C. § 2717(b); and 28 U.S.C. § 1391(b) and (c).

## III. STATUTORY BACKGROUND

4. CERCLA Section 104(a)(1), 42 U.S.C. § 9604(a)(1), provides that whenever there is a release or substantial threat of release into the environment of a hazardous substance, or of any pollutant or contaminant which may present an imminent and substantial endangerment to the public health or welfare, EPA "is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant . . . or take any other response measure consistent with the national contingency plan" that EPA deems necessary to protect the public health or welfare or the environment. CERCLA Section 104(e)(4), 42 U.S.C. § 9604(e)(4), authorizes any officer, employee or representative designated under CERCLA Section 104(e)(1), 42 U.S.C. § 9604(e)(1), to inspect and obtain samples from any facility, establishment, or other place or property referred to in CERCLA Section 104(e)(3), 42 U.S.C. § 9604(e)(3), or from any location of any suspected hazardous substance or pollutant or contaminant.

5. CERCLA authorizes EPA employees and contractors to enter properties at reasonable times "where entry is needed to determine the need for response or the appropriate response or to effectuate a response action" under CERCLA. 42 U.S.C. § 9604(e)(3)(D).

6. CERCLA Section 104(e)(5)(B), 42 U.S.C. § 9604(e)(5)(B), provides that the

United States may commence a civil action to compel compliance with a request for access. "Where there is a reasonable basis to believe there may be a release or threat of a release of a hazardous substance, pollutant, or contaminant," the court "shall enjoin" interference with a request by EPA for entry "unless under the circumstances of the case the demand for entry or inspection is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 9604(e)(5)(B)(i).

## IV. FACTUAL ALLEGATIONS

**Location and History of May Creek Landfill Site**

7. The May Creek Landfill Site is an approximately 10-acre parcel of property located in a semi-rural residential area at 15753 Renton-Issaquah Road SE, Renton, King County, Washington. Defendant has operated the Site as an unpermitted solid waste landfill since approximately 1993. Metal scrapping, auto wrecking, waste incineration, metal smelting, biodiesel production, and disposal of asbestos-containing material have been documented at the Site. Defendant lives in a house on the Site with at least one other family member. He has allowed homeless persons to camp or reside in inoperable recreational vehicles on the Site, and there are at least two known residents living in RVs or camping on the property.

8. The Site contains an unknown quantity of waste, including abandoned vehicles, appliances, construction materials, and numerous unlabeled containers. Except for relatively discreet areas, the majority of the Site is covered in solid waste. Access to the Site is encumbered by solid waste and inoperable vehicles blocking access. Over the decades, the Site has been investigated more than 20 times by local, state, and federal authorities for conducting unpermitted activities as well as hazardous waste management violations. No meaningful cleanup of the Site was conducted until EPA entered the Site in November-December 2018 and removed over 1,600

chemical containers. As a result, Defendant has millions of dollars in judgments against him. On November 30, 2018, the Washington State Superior Court ordered Mr. Pillon to pay $3.88 million in restitution to a public fund. *State of Washington v. Charles Edwin Pillon*, No. 16-1-05983-6 KNT, Nov. 30, 2018 Order Setting Litter Cleanup Restitution Payment.

9. Drainage ditches on the property drain approximately 1,000 feet to May Creek, which flows to Cedar River, which is part of the Cedar River-Lake Washington Watershed. Several dozen residences and a school are within approximately one mile of the Site.

**February 2016 Sampling by the EPA and Its Contractors**

10. On February 25, 2016, the EPA On-Scene Coordinator ("OSC"), Mr. Fowlow, and seven EPA contractors conducted a one-day sampling event at the request of the Washington State Attorney General's Office. The EPA, along with the Washington Department of Ecology, gained access to the Site through a warrant obtained by the Washington State Patrol ("WSP"). EPA's role was to (1) identify and sample areas of potentially contaminated soil; and (2) identify, sample, and analyze samples from containers potentially containing hazardous substances. Hundreds of unlabeled and mislabeled containers were observed in a highly deteriorated condition, many of which were actively leaking. Additionally, several acres of the property were covered in solid waste potentially 20-30 feet deep, making it difficult to know if there were additional containers of unknown substances, and also making it difficult to obtain soil samples.

11. Results from all 13 surface soil samples indicated that soil samples exceeded cleanup levels for cadmium, chromium, benzo(a)pyrene, total toxicity equivalent concentration ("TTEC"), and/or motor oil range organics. These chemicals are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42, U.S.C. § 9601(14), and exposure to them can present a variety of health risks.

12. EPA contractors also analyzed samples taken from nine, on-site containers to determine whether the contents presented hazardous waste characteristics as defined by the Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. §§ 6901, *et seq*. Testing confirmed the presence of toxic, ignitable, and corrosive materials in the containers. EPA concluded that there were likely dozens, or even hundreds, of chemical containers at the Site that contain substances that exhibit these RCRA hazardous waste characteristics.

**Defendant's Conviction and Sentence**

13. Following the February 2016 Site visit and investigation, the Washington State Attorney General's Office brought criminal charges against Defendant in King County Superior Court. On June 15, 2018, Defendant was convicted of two felony counts of illegal auto wrecking and hazardous materials storage and one misdemeanor for solid waste handling. As part of the conditions of his sentence, Defendant was ordered to cease accepting waste onto his property, only dispose of waste though appropriate disposal professionals, and "cooperate fully with any and all clean-up efforts taking place at the property." Subsequently, the sentencing court found that Defendant violated conditions of his sentence and issued an order directing that, "No further activity on the property are allowed by Defendant. The State, County, and EPA are to have un-fettered access to the Site w/o any further legal process."

**July 2018 Site Visit and the EPA's Requests for Access to Conduct Removal Action**

14. Following Defendant's conviction, on July 17, 2018, the Washington Department of Ecology requested the EPA perform an emergency removal action. On July 26, 2018, the EPA, EPA's contractor, Washington State Department of Ecology, and King County Solid Waste Division personnel visited the Site in order to evaluate the extent of contamination and plan for a removal action under CERCLA. Mr. Fowlow attended for the EPA. He received verbal consent

1  from Defendant to walk around and observe the property.  Defendant was provided with a written
2  consent form that he asked for additional time to review.  Defendant later asserted he lost that
3  form.

4      15.    While at the Site, approximately 250 visible containers were observed.  Most of the
5  containers did not have labels and there was no recognizable storage or organization system.
6  Evidence of container releases, including actively leaking containers and stained soil, also was
7  observed.  Defendant stated that he had emptied containers, supposedly containing latex paint,
8  onto wood chips spread directly on the soil.  Suspected asbestos material also was observed during
9  this visit.

10      16.    Following the July 2018 Site visit, EPA made additional unsuccessful attempts to
11  obtain Defendant's consent to further access at the Site.  On August 3, 2018, Defendant emailed
12  Mr. Fowlow outlining various objections he had to EPA involvement at the Site.  Defendant sent
13  emails to the EPA on September 12 and 26, again objecting to the EPA involvement on the Site
14  and claiming a right to an owner-clean up.  On October 3, 2018, EPA Assistant Regional Counsel
15  Kristin Leefers wrote to Defendant, stating the EPA's intent to conduct an assessment and cleanup
16  work under CERCLA, explaining the basis for the proposed action, and requesting Defendant's
17  consent for access to the Site.  In response, Defendant sent a series of emails to the EPA outlining
18  his objections to the EPA's request and proposed plan.  On October 29, 2018, Ms. Leefers emailed
19  Defendant to request access for a Site walk to "visually survey the area in light of proposed cleanup
20  activities."  Defendant responded with multiple emails indicating his refusal to consent.

21  **Administrative Warrant Granting EPA Site Access and November-December 2018**
22  **Sampling and Container Removal**

23      17.    Following the Site inspections described above and Defendant's continuing refusal

to authorize access, EPA applied to this Court for an administrative warrant for site access. 2:18-mc-00114-JPD. This Court issued an administrative warrant on November 15, 2018. *Id.*, Docket #4.

18. On November 16, 2018, EPA and its contractors entered the site to take samples, conduct further inspections of the premises, and remove containers of chemicals, none of which were properly stored. EPA collected and processed over 1,600 chemical containers. To date, EPA has collected 244 samples from those containers and conducted field and/or laboratory analysis for disposal purposes. Within those samples, EPA detected flammable, corrosive, oxidizing, and toxic substances in diverse vessels such as liquid waste in drums and buckets, fluorescent light ballasts, volatile liquid products in tanker trucks, asbestos-containing materials, pesticides/herbicides, and compressed gas cylinders. EPA also encountered drug paraphernalia in buses and RVs on Site, and one of the property residents living in an inoperable RV turned over a jar of mercury that he reportedly accumulated by breaking and collecting mercury from thermometers.

19. In order to take soil samples within the landfill area, a total of 8 test pits were excavated. The thickness of debris in the landfill ranged from 1.5 feet at the margins to 26 feet thick along the centerline. Chemical containers were observed at the surface of the landfill area; however, neither chemical containers nor obvious evidence of contamination was observed in the excavated landfill material. EPA has not yet received analytical results from the laboratory of the landfill soil samples.

20. Beneficial chemical management practices by the property owner have not occurred since the 2016 and July 2018 site visits described above. Chemicals remained stored haphazardly in unlabeled leaking, corroded, and damaged containers. A downhill neighbor

complained that "buckets and drums" have rolled downhill onto their property.

21. Some wastes appear to have been disposed directly onto the ground. In one location covered by wood chips, the property owner stated that he poured out many containers that he believed contained latex paint. EPA has taken soil samples in in this area and expects to have laboratory results for these samples in early January 2019.

22. In another area of the property that appears to be used to work on vehicles, fresh petroleum sheen is observed on surface water runoff from that area during any precipitation event. The disposal of waste directly onto the ground surface presents a threat to groundwater and surface water. Soil samples were taken by EPA from this area in December 2018, and EPA expects to have laboratory results for these samples in early January 2019. If the soils are contaminated above cleanup levels, removal of contaminated soils may be necessary to protect surface water and groundwater. In that event, it also may be necessary to remove an open-walled structure with bays, where vehicle work appears to have been done, that sits atop the soils that are the source of petroleum runoff.

23. On November 30, 2018, the Superior Court of Washington in which Defendant was convicted issued an order finding that Defendant had willfully violated conditions of his sentence. Those violations include Defendant's continuing activity on the property and his "fail[ure] to allow unfettered access to his property for purposes of accessing the environmental impact and facilitate cleanup." The order requires Defendant to serve 30 days in the King County jail, beginning no later than December 3, 2018.

**Need For Additional Site Access To Address Contaminated Soils And Potential Surface Water and Groundwater Contamination**

24. Based on all of the above information, there have been releases of hazardous

substances at the Site, resulting in soils contaminated with hazardous substances in concentrations above cleanup levels.  These contaminated soils, and the threats of further releases of hazardous substances from on-site containers not yet discovered by EPA are a threat to human health and the environment, in part through the threat of groundwater contamination at the site.

25. To protect human health and the environment, additional response actions must be taken at the Site.  These actions include: developing a complete inventory of the types and locations of wastes on the Site; planning and taking response actions to safely contain and/or remove wastes at the Site; sampling soils at the Site, including in areas where liquid wastes appear to have been disposed directly to the ground; removal of soils from the Site that are contaminated with hazardous substances above cleanup levels and pose a threat to surface water or groundwater; installing groundwater monitoring wells; and monitoring the surface water and groundwater to detect any contamination.

26. EPA attempted to obtain permanent access to the Site without further judicial action by seeking Defendant's written agreement to access.  On November 27, 2018, EPA requested that Defendant sign a consent for access form.  That consent for access form would have granted EPA the same access rights that are sought in this Complaint.  Defendant refused to sign the consent for access form.

27. Without an order promptly allowing EPA access to the Site to conduct the work requested in the prayer for relief, groundwater and surface water will continue to be at risk of contamination with hazardous substances.  Delay in EPA's ability to access the Site will also increase the time and expense required to conduct the work.  At present, EPA contractors are available to begin the needed work: soil testing and removal contractors are available to begin work now, and groundwater well contractors are available to begin work in February 2019.

Delaying the start of work beyond these days likely would result in higher costs and longer lead times, including additional coordination with nearby landowners for staging heavy equipment and work.

28. Based on currently available information, EPA believes that all soil sampling, soil removal (including removal of the open-walled structure, if needed), and groundwater monitoring well construction can be completed within 90 days of entry onto Defendant's property for those purposes.

## V. FIRST CLAIM FOR RELIEF

28. The United States re-alleges and incorporates by reference all of the preceding paragraphs. The EPA seeks access to the Site, which is a facility, establishment, or other place or property: (a) from which or to which a hazardous substance or pollutant or contaminant has been or may have been released; (b) where a further release of a hazardous substance is or may be threatened; and (c) where entry is needed to determine the need for response, or the appropriate response, or to effectuate a response action. CERCLA § 104(e)(3)(B)-(D), 42 U.S.C. § 9604(e)(3)(B)-(D).

29. CERCLA grants EPA authority to have access to the Site "for the purposes of determining the need for response, or choosing or taking any response action under this subchapter, or otherwise enforcing the provisions of this subchapter." CERCLA § 104(e)(1), 42 U.S.C. § 9604(e)(1).

30. EPA has a reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant at the Property.

31. CERCLA expressly authorized the United States to initiate a judicial action to obtain a court order to compel compliance with a request for access "where there is a reasonable

1  basis to believe there may be a release or threat of a release of a hazardous substance or pollutant

2  or contaminant." 42 U.S.C. § 9604(e)(5)(B).

3      32. Unless restrained by an order of the Court under Section 104(e)(5)(B) of CERCLA,

4  42 U.S.C. § 9604(e)(5)(B), Defendant's continued denial of immediate entry and access will

5  obstruct, impede or otherwise interfere with EPA's statutory authority to enter the Site to

6  implement necessary response actions under CERCLA.

7  **PRAYER FOR RELIEF**

8  WHEREFORE, Plaintiff United States of America respectfully requests this Court to:

9      1. Issue an Order directing Defendant Charles Pillon, and his agents, employees, or

10 representatives, to provide to EPA, its officers, employees, or representatives with immediate,

11 unimpeded entry and access to the Site at all reasonable times pursuant to Section 104(e) of

12 CERCLA, 42 U.S.C. § 9604(e), for the purposes of conducting response actions at the Site that

13 EPA determines are needed to (a) remove hazardous substances, pollutants, or contaminants from

14 the Site; (b) to install groundwater monitoring wells at the Site; and (c) to take samples at the Site,

15 including samples of soil, groundwater, and surface water;

16     2. Enjoin Defendant Charles Pillon, pursuant to Section 104(e)(5) of CERCLA, 42

17 U.S.C. § 9604(e)(5), from obstructing, impeding, or otherwise interfering with entry and access,

18 at reasonable times, to the Site by EPA, its officers, employees or representatives for the purpose

19 of taking the response actions in the previous paragraph, or otherwise enforcing the provisions of

20 CERCLA;

21     3. Enjoin Defendant Charles Pillon, pursuant to Section 104(e)(5) of CERCLA, 42 U.S.C. §

22 9604(e)(5), from tampering with, preventing access to, or otherwise defacing or destroying, any

23 groundwater wells or other equipment placed at the facility by EPA, its officers, employees or

representatives for the purpose of taking or effectuating any authorized response action, or otherwise enforcing the provisions of CERCLA; and

4. Grant such other and further relief as the Court finds just and appropriate.

UNITED STATES OF AMERICA

SUSAN AKERS
Assistant Section Chief
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

ANNETTE L. HAYES
United States Attorney
Western District of Washington

*signature*

MICHAEL J. ZEVENBERGEN, WSBA #21292
Senior Counsel
Environmental Enforcement Section
U.S. Department of Justice
c/o NOAA Damage Assessment
7600 Sand Point Way, NE
Seattle, Washington 98115
(206) 526-6607
michael.zevenbergen@usdoj.gov
efile_seattle.enrd@usdoj.gov

*Attorneys for The United States of America*

Date: December 21, 2018

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

### DEFENDANTS
Charles Pillon

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   King County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael J. Zevenbergen, U.S. Department of Justice
7600 Sand Point Way NE; Seattle, WA 98115
(206) 526-6607

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1  U.S. Government Plaintiff
[ ] 2  U.S. Government Defendant
[ ] 3  Federal Question (U.S. Government Not a Party)
[ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 865 RSI (405(g)) | [X] 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
CERCLA, 42 U.S.C. § 9604(e)
Brief description of cause:
Action for access order authorizing EPA to respond to hazardous substances on Defendant's property

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE   Hon. James P. Donohue
DOCKET NUMBER   2:18-mc-00114-JPD

DATE   12/21/2018
SIGNATURE OF ATTORNEY OF RECORD   */s/ Michael J. Zevenbergen*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

|  |  |
|---|---|
| *Plaintiff(s)*<br>v.<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*



A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:



If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____      _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*
_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: